## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 02-2167-JWL** |
| | ) | |
| **LNL ASSOCIATES/ARCHITECTS, P.A.,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## CONSENT DECREE

**INTRODUCTION**

**Background**

1.       Defendants,  LNL Associates/Architects, P.A.; Allenbrand-Drews and Associates; Allenbrand-Drews and Associates, Inc.; Loren Drews; Gary Allenbrand; Randall L. Davis; R.L. Davis Company, LLC; Ridgeview Apartments, L.P.; Olathe Leased Housing Associates I, L.P.; Dominium Olathe Partners, L.P.; Olathe Leased Housing Associates II, L.P.; Dominium Kansas One, L.P.; Porta-McCurdy Development Co., L.L.C.; Summit Contractors, Inc.; and third-party defendants The Holland Corporation and Standard Electric Co., Inc., agree to the terms of this Consent Decree, resolving this action filed by Plaintiff United States.

2.       This action is brought by the United States to enforce provisions of Title VIII of the Civil Rights Act of 1968 ("the Fair Housing Act") as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 - 3619, and Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* ("the ADA").  Specifically, the United  States' Complaint alleges that all defendants (except for Randall L. Davis, R.L. Davis Company, LLC, and Ridgeview Apartments, L.P.) have engaged in a pattern or practice of  discrimination by

failing to design and/or construct covered multifamily dwellings at Ridgeview Apartments

("Ridgeview"), located at 1890 N. Lenox, Olathe, Kansas, and Indian Meadows Apartments

("Indian Meadows"), located at 12230 Strang Line Road, Olathe, Kansas, with the features of

accessible and  adaptive design and construction required by subsection 804(f)(3)(C) of the Fair

Housing Act, 42 U.S.C. § 3604(f)(3)(C) and the ADA, 42 U.S.C. § 12183(a)(1).  The Plaintiffs

and Defendants agree that the complexes are subject to the accessible design and construction

requirements of 42 U.S.C. § 3604(f)(3)(C) and 42 U.S.C. § 12183(a)(1).   The United States

alleges that defendants Randall L. Davis; R.L. Davis Company, LLC; and Ridgeview

Apartments, L.P. have engaged in a pattern or practice of  discrimination by failing to design

and/or construct covered multifamily dwellings at Ridgeview with the features of accessible and

adaptive design and construction required by subsection 804(f)(3)(C) of the Fair Housing Act, 42

U.S.C. § 3604(f)(3)(C).

**Defendants**

3.     Defendant LNL Associates/Architects, P.A. ("LNL") was an architectural firm

involved in the design of Ridgeview and Indian Meadows.

4.     Defendants Loren Drews and Gary Allenbrand were the civil engineers for

Ridgeview and Indian Meadows, who formed a partnership named Allenbrand-Drews and

Associates.  Allenbrand-Drews and Associates, Inc., is a civil engineering firm.  Collectively, all

are referred to as "ABD."

5.     Defendant Ridgeview Apartments, L.L.C., an entity controlled by R. L. Davis,

was the original owner of the land on which Ridgeview was built.  R. L. Davis Company, LLC,

contracted with LNL for the original architectural drawings used in part to ultimately build

Ridgeview.  Randall L. Davis was a member of R. L. Davis Company, LLC, and his name appears on some of the drawings for Ridgeview.  Collectively, all are referred to as "Davis."

6.     Defendant Dominium Olathe Partners, L.P. was the previous owner of Indian Meadows and is the current, sole limited partner of  Olathe Leased Housing Associates I, L.P.  Olathe Leased Housing Associates I, L.P. is the current owner of Indian Meadows.  Dominium Olathe Partners, L.P. and Olathe Leased Housing Associates I, L.P., are referred to as the "Indian Meadows Owners."  Dominium Kansas One, L.P. was the previous owner of Ridgeview and is the current, sole limited partner of Olathe Leased Housing Associates II, L.P.  Olathe Leased Housing Associates II, L.P., is the current owner of Ridgeview.  Dominium Kansas One, L.P. and Olathe Leased Housing Associates II, L.P. are referred to as the "Ridgeview Owners."  In no event shall any obligations of the Indian Meadows Owners and the Ridgeview Owners be deemed to be joint and several, unless provided by law or otherwise specifically provided by this Decree.

7.     Defendant Porta-McCurdy Development Co. L.L.C. ("PMC") was one of the developers of Ridgeview and Indian Meadows.

8.     Defendant Summit Contractors, Inc., ("Summit") is the company that built Ridgeview and Indian Meadows.

9.     Third-party defendant The Holland Corp. ("Holland") was the site work subcontractor at Ridgeview.   Third-party defendant Standard Electric Co., Inc. ("Standard") was the electrical subcontractor on Ridgeview and Indian Meadows.

**Relevant Requirements of the Fair Housing Act.**

10.     The Fair Housing Act provides that, for non-elevator residential buildings with

four or more dwelling  units, all ground-floor units that are designed and constructed for first

occupancy after March 13, 1991, are "covered multifamily dwellings" and must include certain

basic features of accessible and adaptive design to make such units accessible to or adaptable for

use by a person who has or develops a disability.   42 U.S.C.  §§ 3604(f)(3)(C) and (f)(7)(B).

      11.    The accessible and adaptive design provisions of the Fair Housing Act require

that for covered multifamily dwellings: (i) the public use and common use portions of such

dwellings are readily accessible to and usable by persons with a disability;  (ii) all the doors

designed to allow passage into and within all premises within such dwellings are sufficiently

wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within

such dwellings contain the following features of adaptive design: (I) an accessible route into and

through the dwelling;  (II) light switches, electrical outlets, thermostats, and other environmental

controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation

of grab bars; and (IV)  usable kitchens and bathrooms such that an individual using a wheelchair

can maneuver about the space.  42 U.S.C. § 3604(f)(3)(C).   These features are referred to herein

as the "Accessible Design Requirements."

**Relevant Requirements of the ADA**

      12.    The Americans with Disabilities Act of 1990 ("ADA"), and the "Standards of

Accessible Design," 28 C.F.R. pt. 36, app. A, that have been issued by the U.S. Department of

Justice to implement the design and construction requirements of Title III of the ADA, also

require that all "public accommodations" designed and constructed for first occupancy after

January 26, 1993, and the goods, services, facilities, privileges, advantages, or accommodations

of those public accommodations, be readily accessible to and usable by persons with disabilities

in accordance with certain accessibility standards promulgated under that Act.  42 U.S.C. § 12183(a)(1); 42 U.S.C. § 12182(a).  A rental office for an apartment complex is a "public accommodation" under the ADA.  42 U.S.C. § 12181(7)(E).  The rental offices at Ridgeview and Indian Meadows were designed and constructed for first occupancy after January 26, 1993, and therefore the rental offices and the facilities and privileges provided at those offices such as public parking are required to be designed and constructed in accordance with the standards promulgated under the ADA.

**Indian Meadows**

13.    Indian Meadows is comprised of seven (7) multi-story, non-elevator buildings each having four or more apartment dwellings that were designed and constructed for first occupancy after March 13, 1991.  There are 74 ground-floor dwellings at Indian Meadows that are "covered multifamily dwellings" within the meaning of 42 U.S.C. § 3604(f)(7)(B).  The apartments and the common areas of Indian Meadows, including the clubhouse, are subject to the requirements of 42 U.S.C. § 3604(f)(3)(C); and the clubhouse rental offices of Indian Meadows are public accommodations within the meaning of Section 301(7)(E) of the Americans with Disabilities Act, 42 U.S.C. § 12181(7)(E).

**Ridgeview**

14.    Ridgeview has twelve (12) multi-story, non-elevator apartment buildings each having four or more apartment dwellings that were designed and constructed for first occupancy after March 13, 1991.  There are 128 ground-floor dwellings at Ridgeview that are "covered multifamily dwellings."  The apartments and the common areas of Ridgeview,  including the clubhouse, are subject to the requirements of 42 U.S.C. § 3604(f)(3)(C); and the clubhouse rental

offices of Ridgeview are public accommodations within the meaning of Section 301(7)(E) of the Americans with Disabilities Act, 42 U.S.C. § 12181(7)(E).

15.    The United States has inspected Indian Meadows and Ridgeview and has specifically identified failures to meet the Accessible Design Requirements and Standards of Accessible Design at these complexes.  The investigation showed that at these properties there are routes from the parking area to numerous building entrances with abrupt level changes in excess of 1/4 inch (such as steps and barrier curbs), running slopes greater than 8.33% and cross slopes greater than 2% and widths less than 36 inches.  Many curb ramps on these routes have running slopes in excess of 8.33%.  There are buildings without accessible resident or visitor parking on an accessible route to the building entrance.  The door hardware on entrances to ground floor units are round knobs which require a tight grasping and twisting of the wrist to operate.  The head height on routes is reduced to less than 80" by the unprotected undersides of stairs and protruding wall mounted porch lights in each building entrance area.  Public and common use areas such as the central dumpsters and mail kiosks lack accessible features for persons who use wheelchairs such as a passenger loading zone with an access aisle and an accessible route without excessive slopes and steps.  Doors to many bathrooms, bedrooms, walk-in-closets and patios of apartments are not sufficiently wide for passage by a person using a wheelchair or other mobility aid.  Passageways into some bathrooms do not provide the requisite 32" clearance for a person using a wheelchair.  Some kitchens and bathrooms are not designed so that an individual using a wheelchair can maneuver about them.  And, thermostat controls are mounted above the maximum reach of a wheelchair user.

16.    Defendants have agreed to bring Ridgeview and Indian Meadows into compliance

with the Fair Housing Act and, where applicable, the ADA, as set forth herein.

**Consent of the Parties to Entry of this Order**

17.     The parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B). The  parties further agree that the controversy should be resolved without further proceedings and without a trial.

18.     The Defendants deny that they have violated the law, and this Consent Decree does not constitute any admission of liability on the part of any of the Defendants.

19.     As indicated by the signatures appearing below, the parties agree to the entry of this Consent Decree.

It is hereby **ORDERED, ADJUDGED, AND DECREED**:

**GENERAL INJUNCTION**

20.     Defendants and each of their officers, employees, agents, successors and assigns, and all other  persons in active concert or participation with them are enjoined from discriminating on the basis of disability as prohibited by the Fair Housing Act, 42 U.S.C. § 3604(f)(1) - (3), and the Americans with Disabilities Act,  42 U.S.C. §§ 12182(a) and 12183(a)(1).

**RETROFIT OF INDIAN MEADOWS AND RIDGEVIEW**

21.     The parties recognize that the Ridgeview and Indian Meadows complexes do not meet the accessibility and adaptability standards of the Fair Housing Act; the Fair Housing Accessibility Guidelines, Design Guidelines for Accessible/Adaptable Dwelling, 56 Fed. Reg. 9472 (1991) ("Guidelines"); the ADA; and the Americans with Disabilities Act Accessibility

Guidelines for Buildings and Facilities ("ADA Standards" or "ADAAG").  To address these violations, Ridgeview Owners and/or Indian Meadows Owners agree to take the corrective actions necessary to bring these complexes into compliance with the Fair Housing Act, the Guidelines, the ADA, and ADA Standards, by completing the actions described in this section and Appendices A, B, C, and D.[1]  Toward the cost of these corrective actions and other costs detailed later in this decree, LNL shall pay $110,000, ABD shall pay $375,000, Davis shall pay $155,000[2], PMC shall pay $155,000, Summit shall pay $50,000, Holland shall pay $3,000, Standard shall pay $3,000 and Ridgeview Owners and/or Indian Meadows Owners shall pay the remaining amounts necessary to complete the corrective actions and pay the costs detailed later in this decree.  LNL, ABD, Davis, PMC, Summit, Holland and Standard shall make payment of the funds required by this paragraph directly to the Ridgeview Owners and/or Indian Meadows Owners within 30 days of the date that this Consent Decree is entered by the Court and in the form of immediately available funds or a cash equivalent.  The amounts paid by LNL, ABD, Davis, PMC, Summit, Holland and Standard shall be paid to the Ridgeview Owners and/or Indian Meadows Owners in proportion to the pro rata share of the costs of completing the

---

[1]HUD regulations provide that "[a] public or common use area that complies with the appropriate requirements of ANSI A117.1-1986 or a comparable standard is accessible."  *See* 24 C.F.R. 100.201 (2002).  HUD interprets "comparable standard" to mean a "standard that affords [persons with disabilities] access essentially equivalent to or greater than that required by ANSI A117.1."  *See* 54 Fed. Reg. 3243 (Jan 23, 1989).  Should Defendants elect to follow a standard other than ANSI for making the public and common-use areas accessible, they will inform the United States in writing of the standard.  Such standard must provide access that is "essentially equivalent" to or "greater" than ANSI A117.1 (1986).

[2]  Because Davis was not sued in connection with the retrofits to Indian Meadows, in no case shall the funds paid by Davis towards the settlement of this case be used to pay for the retrofits made by the Indian Meadows Owners to Indian Meadows.

retrofits, as described in Appendices A, B, C, and D, at Ridgeview and Indian Meadows.  The

Ridgeview Owners and/or Indian Meadows Owners shall specify, no later than 10 days after the

entry of this Consent Decree, how the payments made by LNL, ABD, Davis, PMC, Summit,

Holland and Standard are to be divided as between the Ridgeview Owners and/or the Indian

Meadows Owners.

22.    Accessible Building Entrances on Accessible Routes and Accessible and Usable

Public and Common Use Areas: As soon as reasonably possible after entry of the Consent Order,

but in any event not more than 365 days from the date of the entry of this Consent Order,

Ridgeview Owners and/or Indian Meadows Owners shall commence and finish the retrofits to

the building entrances, accessible routes and the public and common use areas of Indian

Meadows and Ridgeview that are set forth herein and in Appendices A and C.  Ridgeview

Owners and/or Indian Meadows Owners shall perform these modifications at their respective

properties using the money contributed by itself and the other defendants, and shall attempt, in

good faith, to minimize any inconvenience to the residents of Indian Meadows and Ridgeview.

Ridgeview Owners and/or Indian Meadows Owners shall pay all expenses associated with these

modifications at their respective properties that are not covered by the monetary contributions

made by the defendants listed.

23.    Interior of Ground Floor Dwellings:  As soon as reasonably possible after entry of

the Consent Order, but in any event not more than forty-five (45) months from the date of the

entry of this Consent Order, Ridgeview Owners and/or Indian Meadows Owners shall commence

and finish the retrofits to the interior of the ground floor dwellings at Indian Meadows and

Ridgeview that are set forth herein and in Appendices B and D.  Ridgeview Owners and/or

Indian Meadows Owners shall pay all expenses associated with these modifications at their respective properties, using money contributed by it and others, and shall attempt, in good faith, to minimize any inconvenience to the residents of Indian Meadows and Ridgeview.  Ridgeview Owners and/or Indian Meadows Owners shall pay all expenses associated with these modifications at their respective properties that are not covered by the monetary contributions made by the remaining defendants.

24.     Within 30 days from the date of the entry of this Consent Order, Ridgeview Owners and/or Indian Meadows Owners shall provide each and every tenant who resides in a ground floor dwelling with a notice informing the tenant that: (1) the unit does not meet the accessible and adaptive design requirements of the Act; (2) the features of accessible and adaptive design can be retrofitted in the unit upon request; (3) the retrofits offered will be at no cost to the tenant; and (4) the scheduling of the retrofits will take into account the preferences and convenience of the tenant.  This notice shall be substantially equivalent to the form of Appendix E.  If Ridgeview Owners and/or Indian Meadows Owners receive a request from a tenant of a ground floor dwelling to perform the retrofits, Ridgeview Owners and/or Indian Meadows Owners shall complete the retrofits within 45 days from the date on which the retrofits were requested, with such deadline being subject to the provisions of Paragraphs 23 and 26. Notwithstanding the requirements of this or any other paragraph, in no event will the Ridgeview Owners and/or Indian Meadows Owners be required to perform retrofits upon request by tenants at a rate that exceeds six dwelling units during any 30-day period, unless necessary to complete the retrofits within 45 months.

25.     For each ground-floor unit that is vacated during the term of this Decree,

- 10 -

Ridgeview Owners and/or Indian Meadows Owners shall complete the retrofits before the unit is re-rented.

26.     For each ground-floor unit that is not vacated during the term of this Decree, and in which the tenant has not specifically requested retrofits, Ridgeview Owners and/or Indian Meadows Owners shall complete all retrofits, within forty-five (45) months after the entry of this Decree.

27.     Ridgeview Owners and/or Indian Meadows Owners shall endeavor to minimize inconvenience to the tenants in scheduling and performing the retrofits to ground-floor units.

28.     During the period of construction, any resident of a unit scheduled to undergo a modification who will be dislocated from the unit for more than 24 hours consecutively shall be offered a similarly-sized furnished unit at either Ridgeview or Indian Meadows at no cost.

29.     In the event that a similarly-sized furnished unit at Ridgeview or Indian Meadows is not available, Ridgeview Owners and/or Indian Meadows Owners will pay the tenant the applicable government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day of undue inconvenience or hardship for the tenant(s) at their respective properties.  Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident can use the money to obtain alternative living accommodations while dislocated.

30.     Ridgeview Owners and/or Indian Meadows Owners shall enter into a contract with a neutral inspector approved by the United States (hereinafter "Inspector") to conduct on-site inspections of the retrofits that have been performed under this Order to determine if they have been completed in accord with the specifications in Appendices A, B, C and D.

31.     The inspection shall take place within 30 days of the completion of all of the retrofits to units and common use areas, or as soon thereafter as practicable.  Ridgeview Owners and/or Indian Meadows Owners shall give the United States at least three weeks notice of the inspection and shall give the United States an opportunity to have its representative present for the inspection.

32.     The Inspector shall set out the results of each inspection, including deficits if any, in writing and shall send that report to counsel for the United States[3] and Ridgeview Owners and/or Indian Meadows Owners.  If the inspection indicates that not all of the required retrofits have been made as specified in Appendices A, B, C and D, Ridgeview Owners and/or Indian Meadows Owners shall correct any deficiencies within a reasonable period of time and shall pay for another inspection by the same Inspector to certify the deficiencies have been corrected.  This process shall continue until the Inspector certifies that all of the necessary modifications have been made.  Ridgeview Owners and/or Indian Meadows Owners shall pay all of the Inspector's reasonable costs associated with these inspections, and such payments shall be made without regard to the Inspector's findings.  Upon reasonable notice to Ridgeview Owners and/or Indian Meadows Owners, representatives of the United States shall be permitted to inspect the modifications made by Ridgeview Owners and/or Indian Meadows Owners in accordance with this Consent Order or the third-party inspection reports provided for in this Order, to ensure

_____

[3]  For purposes of this Order, counsel for the United States is Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Avenue, NW Building – G St., Washington, D.C. 20530, Attn: DJ# 175-29-85, or as otherwise directed by the United States.  All reports mentioned in this Order shall be sent to that address.

compliance; provided, however, that the United States shall endeavor to minimize any inconvenience caused by such inspections.

33.     Ridgeview Owners and/or Indian Meadows Owners and its agents and affiliated companies may not charge any additional rent, deposit or other fee for the units in which retrofits are implemented solely because of the contemplated or completed retrofits.

34.     Sale or Transfer of an Ownership Interest in Indian Meadows and Ridgeview: The sale or transfer of ownership, in whole or in part, of the Indian Meadows and/or Ridgeview complexes shall not affect Ridgeview Owners' or Indian Meadows Owners' continuing obligations to retrofit the properties as specified in this Consent Order.  Should Ridgeview Owners or Indian Meadows Owners decide to sell or transfer any ownership of Indian Meadows and Ridgeview, in whole or in part, or any portion thereof, prior to the completion of the retrofits specified in Appendices A, B, C and D, it will at least thirty (30) days prior to completion of the sale or transfer: (a) provide to each prospective buyer written notice that the Indian Meadows and Ridgeview complexes are subject to this Consent Order, including specifically Ridgeview Owners or Indian Meadows Owners obligations to complete required retrofit work and to allow inspections, along with a copy of this Consent Order; and (b) provide to the United States, by facsimile and first class mail, written notice of its intent to sell or transfer ownership, along with a copy of the notice sent to each buyer, and each buyer's name, address and telephone number.

**ADDITIONAL ACCESSIBILITY FEATURES**

35.     In addition to the retrofits specified in paragraph 23, Ridgeview Owners and/or Indian Meadows Owners shall make any or all of the following accessibility enhancements that are requested by a current, prospective or future tenant with a disability living in, or moving into,

a ground floor unit at Ridgeview or Indian Meadows, subject to the procedures set forth in

paragraphs 36-37.  Nothing in this Section shall be interpreted as requiring the Ridgeview

Owners and/or Indian Meadows Owners to make these additional accessibility enhancements for

any prospective tenants unless and until that prospective tenant signs a lease to live in Ridgeview

or Indian Meadows.

Removal of cabinetry under the kitchen sink and/or bathroom lavatory so that a person using a wheelchair can make a full forward approach to the sink in accordance with ANSI 4.32.5.5[4] and, where cabinetry is removed, install additional cabinets (including, if requested, wall-mounted cabinets in the bathrooms) to make up for the loss of storage;

Either the removal of the oven unit such that a person using a wheelchair can make a full forward approach to the cook top in accordance with ANSI 4.32.5.6 plus the provision of a separate oven appliance (i.e., convection oven) **or** the alternative removal of the necessary cabinetry to allow a full parallel approach to the oven in accordance with ANSI 4.32.5.7;

Controls on ovens/ranges that are located on the front of the range, or on the side or in the middle of the range;

Accessible bathrooms with roll-in showers in accordance with ANSI 4.21;

Taller accessible toilets through the provision of toilet seat extenders;

The installation of grab bars surrounding the bathroom and toilet areas in accordance with ANSI 4.16 - 4.21;

Lever door hardware throughout the unit;

A security system with panic button(s) options at the control pad;

Lever controls on faucets, tubs, kitchens, baths, and all other fixtures;

Wand shower head on flexible tube or shower head on height adjustable rod;

U-shaped pulls near hinges on exterior of front door that permit the door to be closed more easily;

---

[4]All ANSI references are to ANSI A117.1 (1986)

Either ramp over the level drop on the exterior side of the patio door **or** in the alternative a wooden deck built over the exterior patio so that wheelchairs can re-enter the living room within ANSI ranges;

Repair or replace the sliding glass door that leads to the patio so that it meets ANSI standards;

Installation of a beveled threshold that leads from the interior of the unit to the sliding glass door to the patio, so that wheelchairs can exit the living room within ANSI ranges;

Relocation of hanging rods and shelves in the closets to be within ANSI reach ranges;

Automatic door openers on the exterior doors;

Cabinets in the kitchen that are more easily accessible to wheelchair users, including, but not limited to, the removal of some cabinets and the replacement with more accessible storage space;

Oven mounted high in cabinet (wall mount);

Lower kitchen counters (lower cabinets or decrease in toe area height);

Anti-scald valves in shower;

Electronic thermostats with large numbers and push buttons to adjust and/or remote thermostat control;

Fish-eye peep hole or wide view peephole at tenant's preferred height (possibly combined with periscope peep hole so that if you look out at 48" you can see out at 60");

Offset or swing-clear hinges on one or more doors in the units to allow more width for the passage of wide wheelchairs;

Replacement of electric flip switch with rocker switch operable with push;

Installation of strobe light alarms for fire and/or light (visual) door bell indicator;

Installation of full-height mirror in bathroom so person seated in a wheelchair can view him or herself;

Pull-out shelves in kitchen and/or bathroom cabinets;

Smooth kick plate on the push side of the unit entry door so wheelchair footrests may be used to push open the door without damaging the surface of the door;

- 15 -

Side-by-side or freezer-under style refrigerators for access to both freezer and fridge areas;

Accessible larger cabinet hardware that allows you to loop a hand or fingers into a u-shaped pull;

Full extension drawer slides in kitchen and bath cabinets to allow use of all of the drawer space.

Widening of the door leading to the bedroom behind the kitchen at Indian Meadows, including, if necessary, widening of the hallway leading to the door.

36.     Ridgeview Owners and/or Indian Meadows Owners shall notify current tenants of the availability of these accessibility enhancements by sending written information (identical to or similar to the notice in Appendix J) to current tenants living in ground floor units.  Ridgeview Owners and/or Indian Meadows Owners shall also notify all future and prospective tenants if the tenant asks for information about the dwelling unit to be mailed to him or her, or if he or she appears in person at Ridgeview and Indian Meadows, whether or not the future or prospective tenant asks for the enhanced accessibility information.

37.     To install these additional accessibility features, Ridgeview Owners and/or Indian Meadows Owners will contract with an organization, to be approved by the United States, which will arrange to have a licensed, bonded and insured contractor do the work.  The costs of that contract shall be paid by the Ridgeview Owners and/or the Indian Meadows Owners.  Ridgeview Owners and/or Indian Meadows Owners will have the right to inspect and approve the plans for the work, and to specify the quality of the materials and fixtures to be used.  In no case will the cost of all additional accessibility features actually installed in all the units at Ridgeview and Indian Meadows, in the aggregate, total more than $200,000.  The Ridgeview Owners and/or the Indian Meadows Owners shall offer these additional accessibility features beginning within 60

days of the entry of this Consent Decree, and continuing until ten years after the entry of this

Consent Decree.  During that ten-year period, interior dwelling units at Ridgeview and Indian

Meadows shall not be considered to comply with the Fair Housing Act's accessible design

requirements unless these accessibility enhancements continue to be provided as described in

this Order.  If any money is left over after ten years, the remainder must be used for

improvements to the property to make it more accessible to persons with disabilities.

**NON-DISCRIMINATION IN FUTURE DESIGN AND CONSTRUCTION**

38.     For the duration of this Consent Order, Defendant ABD shall maintain, and

provide to the United States, upon request, the following information and statements regarding

any covered, multifamily dwellings intended to be purchased, developed, built, designed, and/or

engineered in whole or in part, by any of them or by any entities in which they have a position of

control as an officer, director, member, or manager, or have a fifty-percent (50%) or larger

ownership share, provided, however, that such information and statements need to be maintained

and/or provided only on projects in which ABD is actually involved, not on those projects in

which ABD bids or expresses an interest, but does not become finally involved:

     a.     the name and address of the project;

     b.     a description of the project and the individual units;

     c.     the name, address, and telephone number of the civil engineer(s) involved with

          the project;

     d.     a statement from the civil engineer(s) involved with the project acknowledging

          and describing his/her knowledge of and training in the requirements of the Fair

          Housing Act and the ADA and in the field of accessible site design and certifying

- 17 -

that he/she has reviewed the engineering documents for the project and that the design specifications therein fully comply with the requirements of the Fair Housing Act, the Guidelines, the ADA, and ADAAG;

39.     For the duration of this Consent Order, Defendant LNL shall maintain, and provide to the United States, upon request, the following information and statements regarding any covered, multifamily dwellings intended to be purchased, developed, built, designed, and/or engineered in whole or in part, by any of them or by any entities in which they have a position of control as an officer, director, member, or manager, or have a fifty-percent (50%) or larger ownership share, provided, however, that such information and statements need to be maintained and/or provided only on projects in which LNL is actually involved, not on those projects in which LNL bids or expresses an interest, but does not become finally involved:

    a.    the name and address of the project;

    b.    a description of the project and the individual units;

    c.    the name, address and telephone number of the architect(s) involved with the project; and

    d.    a statement from the architect(s) acknowledging and describing his/her knowledge of and training in the requirements of the Fair Housing Act and the ADA and in the field of accessible building and housing design and certifying that he/she has reviewed the architectural plans for the project and that design specifications therein fully comply with the requirements of the Fair Housing Act, the Guidelines, the ADA, and ADAAG.

40.     For the duration of this Consent Order, Defendants Davis, PMC, Summit and

Ridgeview Owners and/or Indian Meadows Owners shall maintain, and provide to the United States, upon request, the following information and statements regarding any covered, multifamily dwellings intended to be purchased, developed, built, designed, and/or engineered in whole or in part, by any of them or by any entities in which they have a position of control as an officer, director, member, or manager, or have a fifty-percent (50%) or larger ownership share; provided, however, that such information and statements need to be maintained and/or provided only on projects in which the defendants are actually involved, not on those projects in which the defendants bid or express an interest, but do not become finally involved:

    a.     the name and address of the project;

    b.     a description of the project and the individual units;

    c.     the name, address, and telephone number of the civil engineer(s) and/or architects involved with the project;

    d.     a statement from a designated "accessibility compliance officer" responsible for that project acknowledging and describing his/her knowledge of and training in the requirements of the Fair Housing Act and the ADA and in the field of accessible site design and certifying that he/she has reviewed the documents for the project and that, to the best of his knowledge, the specifications therein fully comply with the requirements of the Fair Housing Act, the Guidelines, the ADA, and ADAAG;

    41.    If the engineering documents or architectural plans are revised, and the revisions could have any impact on the accessibility of the dwellings or complex, Defendants shall obtain and maintain, and provide to the United States upon request, a statement from the civil

engineer(s) or architect(s) or accessibility compliance officer, as applicable, that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the Fair Housing Act, the Guidelines, the ADA, and ADAAG.

**PAYMENTS TO AGGRIEVED PERSONS**

42.     Within thirty (30) days after the date of this Order, Ridgeview Owners and/or Indian Meadows Owners shall deposit in an interest-bearing account the total sum of two hundred thousand dollars ($200,000) for the purpose of compensating any aggrieved persons who may have suffered as a result of Defendants' discriminatory housing practices.  This money shall be referred to as the "Settlement Fund."

43.     Within 15 days of the entry of this Order, Ridgeview Owners and/or Indian Meadows Owners shall publish the Notice to Potential Victims of Housing Discrimination ("Notice") at Appendix G informing readers of the availability of compensatory funds.  The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in a newspaper of general circulation serving the area in which Indian Meadows and Ridgeview are located.  The publication dates shall be separated from one another by 21 days, and at least two of the publication dates shall be on a Sunday.  Within 10 days of each publication date, Ridgeview Owners and/or Indian Meadows Owners shall provide the newspaper containing the Notice to counsel for the United States.

44.     Within 15 days of the entry of this Order, Ridgeview Owners and/or Indian Meadows Owners shall send a copy of the Notice to each of the following organizations:

Kansas Legal Services, 707 Minnesota Ave., Suite 600, Kansas City, KS 66101

The Whole Person, 114 W. Gregory Blvd., Kansas City, MO 64111

Coalition for Independence, 4911 State Ave., Kansas City, KS 66102

Rehabilitation Institute of Kansas, 3011 Baltimore, Kansas City, MO 64108

Universal Design Housing Network, 2700 E. 18th St., Suite 261, Kansas City, MO 64127

Greater Kansas City Housing Information Center, 6285 Paseo Blvd., Kansas City, MO 64110

Legal Aid of Western Missouri, 1125 Grand Blvd., Suite 1900, Kansas City, MO 64108

Olathe County Housing Program, City of Olathe, P.O. Box 768, 300 N. Chestnut, Olathe, KS 66051-0768

45.     Within 60 days of the entry of this Order, Ridgeview Owners and/or Indian Meadows Owners shall send, by first-class mail, postage pre-paid, a copy of the Notice to each past or present tenant at Indian Meadows and Ridgeview.  For past tenants, Ridgeview Owners and/or Indian Meadows Owners will have complied with the requirements of this paragraph by mailing such notice to the forwarding address provided to the Ridgeview Owners and/or Indian Meadows Owners or its agents by the former tenant at the time the former tenant moved out of the properties.  No additional efforts to locate former tenants shall be required of Ridgeview Owners and/or Indian Meadows Owners.  Within 75 days of entry of this Order, Ridgeview Owners and/or Indian Meadows Owners shall provide to counsel for the United States proof that the Notice has been sent.

46.     Nothing in this section shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

47.     Allegedly aggrieved persons shall have 150 days from the date of the entry of this Order to contact the United States in response to the Notice.  The United States shall investigate the claims of allegedly aggrieved persons and, within 210 days from the entry of this Order, shall

make a preliminary determination of which persons are aggrieved and an appropriate amount of

damages that should be paid to the each such person.  The preliminary determinations of the

appropriate amount of damages shall total no more than $200,000 and shall not include any

interest that has accrued in the account.  The United States will inform Ridgeview Owners and/or

Indian Meadows Owners, in writing, of its preliminary determinations, together with a copy of a

sworn declaration from each aggrieved person setting forth the factual basis of the claim.

Ridgeview Owners and/or Indian Meadows Owners shall have 60 days to review the declaration

and provide to the United States any comments, documents or information that they believe may

refute the claim.

      48.    Not later than 60 days after receiving Ridgeview Owners' and Indian Meadows

Owners' comments, documents and information, the United States shall submit its final

recommendations to the Court for approval, together with a copy of the declarations and any

additional information submitted by Ridgeview Owners and/or Indian Meadows Owners.  The

final recommendations by the United States shall not total more than $200,000 and shall not

include any interest that has accrued in the account.  When the Court issues an order approving

or changing the United States' proposed distribution of funds for aggrieved persons, Ridgeview

Owners and/or Indian Meadows Owners shall, within ten (10) days of the Court's order, deliver

to the United States checks payable to the aggrieved persons in the amounts approved by the

Court, plus a proportionate share of the interest that has accrued in the Settlement Fund as of the

day before the checks are sent to the United States.  In no event shall the aggregate of all such

checks exceed the sum of the Settlement Fund, including accrued interest.  No aggrieved person

shall be paid until he/she has executed and delivered to counsel for the United States the release

at Appendix F.

49.     In the event that less than the total amount in the fund including accrued interest is distributed to aggrieved persons, the remainder shall revert to Ridgeview Owners and/or Indian Meadows Owners.

50.     Ridgeview Owners and/or Indian Meadows Owners shall permit the United States, upon reasonable notice, to review any records that may reasonably facilitate its determinations regarding the claims of alleged aggrieved persons.  In no event will the Ridgeview Owners and/or Indian Meadows Owners be required to produce documents and information that have been previously produced in this action.  The Ridgeview Owners and/or Indian Meadows Owners will have met their obligations under this paragraph by making requested records available at the subject property.

## CIVIL PENALTY

51.     Of the total amount of money used to pay for the corrective actions and other costs required under this Consent Decree, save and except the amounts contributed by and on behalf of LNL and ABD, the total sum of fifty thousand dollars ($50,000) shall be used to pay a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C) and 42 U.S.C. § 12188(b)(2)(C)(I).  Said sum shall be paid within 40 days of the date of entry of this Order by submitting a check made payable to the United States of America to counsel for the United States.

## EDUCATIONAL PROGRAM

52.     Within thirty (30) days of the entry of this Order, LNL and ABD shall provide a copy of this Order to all their agents and employees involved in the design or construction of covered multifamily dwellings and secure the signed statement from each agent or employee

acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement shall be substantially similar in the form of Appendix H.

53.     Within thirty (30) days of the entry of this Order, Summit, PMC and Davis shall provide a copy of this Order to their principals, primary managers, and accessibility compliance officers  involved in the design or construction of covered multifamily dwellings and secure the signed statement from each acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement shall be substantially similar in the form of Appendix H.

54.     Within thirty (30) days of the entry of this Order, Ridgeview Owners and/or Indian Meadows Owners shall provide a copy of this Order to their principals, managers, supervisors, accessibility compliance officers and the property managers of the Ridgeview and Indian Meadows apartment complexes and secure the signed statement from each acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement shall be substantially similar in the form of Appendix H.

55.     During the term of this Order, within thirty (30) days after the date he or she commences an agency or employment relationship with Defendants, each new agent or employee mentioned in paragraphs 52-54 shall be given a copy of this Order and be required to sign the statement acknowledging that he or she has received and read the Order, and has had an opportunity to have questions about the Order answered.  This statement shall be substantially similar to the form of Appendix H.

56.     Defendants shall also ensure that they and their employees and agents who have primary management authority over the design and/or construction of covered multifamily dwellings have a copy of, are familiar with, and personally review, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991) and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, *A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act*, (August 1996, Rev. April 1998).  Defendants and all employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of multifamily dwellings at issue in this case shall be informed of those portions of the Fair Housing Act that relate to accessibility requirements, reasonable accommodations and reasonable modifications.

57.     Within 180 days of the date of entry of this Consent Order, Defendants (except Loren Drews, who is retired and is not subject to the training requirements in this paragraph unless and until he elects to resume the practice of engineering) and all employees and agents whose duties, in whole or in part, involve or will involve primary management authority[5] over the development, design and/or construction of multifamily dwellings of the type at issue in this case shall undergo training on the design and construction requirements of the Fair Housing Act and the ADA, unless they have already had similar training within the last four years.[6]  The training shall be conducted by a qualified individual who has been previously approved by the

[5] For purposes of this Order, Summit employees with "primary management authority" means all division and project managers.

[6] The educational program provided to employees not engaged in design, construction or maintenance, such as sales and rental employees, may focus on the portions of the law that relate generally to accessibility requirements as opposed to technical design and construction requirements.

- 25 -

Department of Justice, and any expenses associated with this training shall be borne by Defendants.  Defendants shall provide to the United States, within thirty (30) days after the training, the name(s), address(es) and telephone number(s) of the trainer(s); copies of the training outlines and any materials distributed by the trainers; and certifications executed by all Defendants and covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix I.

**NOTICE OF DEFENDANTS' NON-DISCRIMINATION POLICY**

58.     Within 10 days of the date of entry of this Consent Order, Defendants shall post and prominently display in the sales or rental offices of all covered multifamily dwellings owned or operated by them, including but not limited to Indian Meadows and Ridgeview, a sign no smaller than 10 by 14 inches indicating that all dwellings are available for rental on a nondiscriminatory basis.  A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

59.     For the duration of this Consent Order, in all future advertising in newspapers, and on pamphlets, brochures and other promotional literature regarding the existing complexes or any new complexes that any Defendant may develop or construct, Defendants shall place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the federal Fair Housing Act.

**NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS**

60.     Two hundred and ten (210) days after the date of entry of this Consent Order, Defendants shall submit to the United States an initial report regarding the signed statements of Defendants, employees and agents who have completed the training program specified in

paragraph 57 of this Consent Order.  Thereafter during the term of this Order, Defendants shall, on the anniversary of the entry of this Order, submit to the United States a report containing the signed statements of new employees and agents that, in accordance with paragraph 57 of this Consent Order, they have received and read the Order, and had an opportunity to have questions about the Order answered.

61.     For the duration of this Consent Order, Defendants shall advise the United States in writing within fifteen (15) days of receipt of any written administrative or legal fair housing complaint against any property owned or managed by Defendants, or against any employees or agents of Defendants working at or for any such property, regarding discrimination on the basis of disability in housing.  Upon reasonable notice, Defendants shall also provide the United States all information it may request concerning any such complaint.  The Defendants shall also advise counsel for the United States, in writing, within fifteen (15) days of the resolution of any complaint.

62.     For the term of this Consent Order, Defendants are required to preserve all records related to this Consent Order, for Indian Meadows and Ridgeview and all covered multifamily dwellings designed, constructed, owned, operated, or acquired by them during the duration of this Consent Decree.  Upon reasonable notice to Defendants, representatives of the United States shall be permitted to inspect and copy any records of Defendants or inspect any developments or residential units under Defendants' control bearing on compliance with this Consent Order at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to Defendants from such inspections.

**DURATION OF CONSENT ORDER AND TERMINATION OF LEGAL ACTION**

63.     This Consent Order shall remain in effect for four (4) years after the date of its entry.  By consenting to entry of this Order, the United States and the Defendants agree that in the event that Defendants engage in any future conduct occurring after entry of this Order that leads to a determination of a violation of the Fair Housing Act, such conduct shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).  By consenting to entry of this Consent Order, the United States and the Defendants agree that in the event that Defendants engage in any future violation(s) of the ADA, such violation(s) shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 12188(b)(2)(C)(ii).

64.      The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Decree, at which time the case shall be dismissed with prejudice. Plaintiffs may move the Court to extend the duration of the Decree in the interests of justice.

65.     The United States and the Defendants shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution.  However, in the event of a failure by Defendants to perform, in a timely manner, any act required by this Order or otherwise for Defendants to fail to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

**TIME FOR PERFORMANCE**

66.     Any time limits for performance imposed by this Consent Order may be extended by the mutual written agreement of the United States and the relevant Defendants.

**COSTS OF LITIGATION**

67.     Each party to this litigation will bear its own costs and attorney's fees associated with this litigation.

So ORDERED this 2nd  day of  November,  2006.

s/ John W. Lungstrum
_____
JOHN W. LUNGSTRUM
United States District Judge

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

ERIC F. MELGREN                     WAN J. KIM
United States Attorney              Assistant Attorney General
                                    Civil Rights Division

s/Christina L. Medeiros             s/Allen W. Levy
CHRISTINA L. MEDEIROS                       STEVEN H. ROSENBAUM, Chief
Assistant United States             KEISHA DAWN BELL, Deputy Chief
  Attorney                ALLEN W. LEVY, Trial Attorney
500 State Avenue, Suite 360         United States Department of Justice
Kansas City, Kansas 66101           Civil Rights Division
KS.S.CT. # 12884                    Housing and Civil Enforcement Section
                                    950 Pennsylvania Ave., NW
                                    Washington, D.C.  20530

**FOR DEFENDANTS L&N ASSOCIATES/ARCHITECTS, P.A.**
      **AND ALLENBRAND-DREWS AND ASSOCIATES, INC.:**

                        _____
                        MICHAEL G. NORRIS
                        JAMES D. MYERS
                        Norris & Keplinger, L.L.C.
                        Financial Plaza II, 6800 College Blvd., Suite 630
                        Overland Park, Kansas 66211

**FOR DEFENDANTS RANDALL L. DAVIS;**
      **R.L. DAVIS CO., L.L.C.; and RIDGEVIEW**
      **APARTMENTS, L.P.:**

                        _____
                        PHILIP C. ROUSE
                        MARY O'CONNELL
                        OMID AMJADI
                        Douthit, Frets, Rouse & Gentile, L.L.C.
                        903 E. 104th Street, Suite 610
                        Kansas City, Missouri  64131

**FOR DEFENDANT PORTA-MCCURDY DEVELOPMENT CO., L.L.C. :**

_____
RICHARD S. BENDER
Rosenblum, Goldenhersh, Silverstein & Zafft, P.C.
7733 Forsyth Boulevard, Fourth Floor
St. Louis, Missouri  63105-1812

**FOR DEFENDANT THE HOLLAND CORP., INC.:**

_____
MARTY T. JACKSON
Wallace, Saunders, Austin, Brown & Enochs, Chtd. - OP
10111 W 87th St
Overland Park, KS 66212

**FOR DEFENDANT SUMMIT CONTRACTORS, INC.:**

_____
S. MICHAEL THOMAS
Sherman Taff Bangert Thomas & Coronado, P.C.
1100 Main St., Suite 2890
P. O. Box 26530
Kansas City, Missouri 64196

**FOR DEFENDANTS OLATHE LEASED HOUSING ASSOCIATES I, L.P.;
    DOMINIUM OLATHE PARTNERS; OLATHE LEASED HOUSING
    ASSOCIATES II, L.P.; AND DOMINIUM KANSAS ONE:**

_____
NORMAN J. BAER
NATHAN P. BRENNA
Anthony, Ostlund and Baer, P.A.
90 South Seventh Street, Suite 3600
Minneapolis, MN 55402

**FOR DEFENDANTS GARY ALLENBRAND, LOREN DREWS AND
     ALLENBRAND-DREWS AND ASSOCIATES:**

_____
JEROME V. BALES
KENTON E. SNOW
Lathrop & Gage, L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, KS 64108

**FOR DEFENDANT STANDARD ELECTRIC CO., INC.:**

_____
JOHN R. CAMPBELL
John R. Campbell, Jr., LLC
One Hallbrook Place, 11150 Overbrook Road, Suite 350
Leawood, KS 66211-2298

**FOR DEFENDANT PORTA-MCCURDY DEVELOPMENT CO., L.L.C. :**

_____
RICHARD S. BENDER
Rosenblum, Goldenhersh, Silverstein & Zafft, P.C.
7733 Forsyth Boulevard, Fourth Floor
St. Louis, Missouri 63105-1812

**FOR DEFENDANT THE HOLLAND CORP., INC.:**

_____
MARTY T. JACKSON
Wallace, Saunders, Austin, Brown & Enochs, Chtd. - OP
10111 W 87th St
Overland Park, KS 66212

**FOR DEFENDANT SUMMIT CONTRACTORS, INC.:**

_____
S. MICHAEL THOMAS
Sherman Taff Bangert Thomas & Coronado, P.C.
1100 Main St., Suite 2890
P. O. Box 26530
Kansas City, Missouri 64196

**FOR DEFENDANTS OLATHE LEASED HOUSING ASSOCIATES I, L.P.;**
**DOMINIUM OLATHE PARTNERS; OLATHE LEASED HOUSING**
**ASSOCIATES II, L.P.; AND DOMINIUM KANSAS ONE:**

_____
NORMAN J. BAER
NATHAN P. BRENNA
Anthony, Ostlund and Baer, P.A.
90 South Seventh Street, Suite 3600
Minneapolis, MN 55402

**FOR DEFENDANTS GARY ALLENBRAND, LOREN DREWS AND
ALLENBRAND-DREWS AND ASSOCIATES:**

JEROME V. BALES
KENTON E. SNOW
Lathrop & Gage, L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, KS 64108

**FOR DEFENDANT STANDARD ELECTRIC CO., INC.:**

JOHN R. CAMPBELL
John R. Campbell, Jr., LLC
One Hallbrook Place, 11150 Overbrook Road, Suite 350
Leawood, KS 66211-2298

- 32 -

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

ERIC F. MELGREN
United States Attorney

WAN J. KIM
Assistant Attorney General
Civil Rights Division

---

CHRISTINA L. MEDEIROS
Assistant United States
  Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
KS.S.CT. # 12884

---

STEVEN H. ROSENBAUM, Chief
KEISHA DAWN BELL, Deputy Chief
ALLEN W. LEVY, Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., NW
Washington, D.C.  20530

**FOR DEFENDANTS L&N ASSOCIATES/ARCHITECTS, P.A.
AND ALLENBRAND-DREWS AND ASSOCIATES, INC.:**

---

MICHAEL G. NORRIS
JAMES D. MYERS   18709
Norris & Keplinger, L.L.C.
Financial Plaza II, 6800 College Blvd., Suite 630
Overland Park, Kansas 66211

**FOR DEFENDANTS RANDALL L. DAVIS;
R.L. DAVIS CO., L.L.C.; and RIDGEVIEW
APARTMENTS, L.P.:**

---

PHILIP C. ROUSE
MARY O'CONNELL
OMID AMJADI
Douthit, Frets, Rouse & Gentile, L.L.C.
903 E. 104th Street, Suite 610
Kansas City, Missouri  64131

- 30 -

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

ERIC F. MELGREN
United States Attorney

WAN J. KIM
Assistant Attorney General
Civil Rights Division

_____

CHRISTINA L. MEDEIROS
Assistant United States
   Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
KS.S.CT. # 12884

_____

STEVEN H. ROSENBAUM, Chief
KEISHA DAWN BELL, Deputy Chief
ALLEN W. LEVY, Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., NW
Washington, D.C.  20530

**FOR DEFENDANTS L&N ASSOCIATES/ARCHITECTS, P.A.**
    **AND ALLENBRAND-DREWS AND ASSOCIATES, INC.:**

_____

MICHAEL G. NORRIS
JAMES D. MYERS
Norris & Keplinger, L.L.C.
Financial Plaza II, 6800 College Blvd., Suite 630
Overland Park, Kansas 66211

**FOR DEFENDANTS RANDALL L. DAVIS;**
   **R.L. DAVIS CO., L.L.C.; and RIDGEVIEW**
   **APARTMENTS, L.P.:**

_____

PHILIP C. ROUSE
MARY O'CONNELL
OMID AMJADI
Douthit, Frets, Rouse & Gentile, L.L.C.
903 E. 104th Street, Suite 610
Kansas City, Missouri  64131

- 30 -

**FOR DEFENDANT PORTA-MCCURDY DEVELOPMENT CO., L.L.C. :**

RICHARD S. BENDER
Rosenblum, Goldenhersh, Silverstein & Zafft, P.C.
7733 Forsyth Boulevard, Fourth Floor
St. Louis, Missouri 63105-1812

**FOR DEFENDANT THE HOLLAND CORP., INC.:**

MARTY T. JACKSON
Wallace, Saunders, Austin, Brown & Enochs, Chtd. - OP
10111 W 87th St
Overland Park, KS 66212

**FOR DEFENDANT SUMMIT CONTRACTORS, INC.:**

S. MICHAEL THOMAS
Sherman Taff Bangert Thomas & Coronado, P.C.
1100 Main St., Suite 2890
P. O. Box 26530
Kansas City, Missouri 64196

**FOR DEFENDANTS OLATHE LEASED HOUSING ASSOCIATES I, L.P.;**
**DOMINIUM OLATHE PARTNERS; OLATHE LEASED HOUSING**
**ASSOCIATES II, L.P.; AND DOMINIUM KANSAS ONE:**

NORMAN J. BAER
NATHAN P. BRENNA
Anthony, Ostlund and Baer, P.A.
90 South Seventh Street, Suite 3600
Minneapolis, MN 55402

- 31 -

FOR DEFENDANT PORTA-MCCURDY DEVELOPMENT CO., L.L.C. :

RICHARD S. BENDER
Rosenblum, Goldenhersh, Silverstein & Zafft, P.C.
7733 Forsyth Boulevard, Fourth Floor
St. Louis, Missouri 63105-1812

FOR DEFENDANT THE HOLLAND CORP., INC.:

MARTY T. JACKSON
Wallace, Saunders, Austin, Brown & Enochs, Chtd. - OP
10111 W 87th St
Overland Park, KS 66212

FOR DEFENDANT SUMMIT CONTRACTORS, INC.:

S. MICHAEL THOMAS
Sherman Taff Bangert Thomas & Coronado, P.C.
1100 Main St., Suite 2890
P. O. Box 26530
Kansas City, Missouri 64196

FOR DEFENDANTS OLATHE LEASED HOUSING ASSOCIATES I, L.P.;
  DOMINIUM OLATHE PARTNERS; OLATHE LEASED HOUSING
  ASSOCIATES II, L.P.; AND DOMINIUM KANSAS ONE:

NORMAN J. BAER
NATHAN P. BRENNA
Anthony, Ostlund and Baer, P.A.
90 South Seventh Street, Suite 3600
Minneapolis, MN 55402

- 31 -

**FOR DEFENDANTS GARY ALLENBRAND, LOREN DREWS AND**
**ALLENBRAND-DREWS AND ASSOCIATES:**

JEROME V. BALES
KENTON E. SNOW
Lathrop & Gage, L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, KS 64108

**FOR DEFENDANT STANDARD ELECTRIC CO., INC.:**

JOHN R. CAMPBELL
John R. Campbell, Jr., LLC
One Hallbrook Place, 11150 Overbrook Road, Suite 350
Leawood, KS 66211-2298

- 32 -

FOR DEFENDANT PORTA-MCCURDY DEVELOPMENT CO., L.L.C. :

_____
RICHARD S. BENDER
Rosenblum, Goldenhersh, Silverstein & Zafft, P.C.
7733 Forsyth Boulevard, Fourth Floor
St. Louis, Missouri  63105-1812

FOR DEFENDANT THE HOLLAND CORP., INC.:

_____
MARTY T. JACKSON
Wallace, Saunders, Austin, Brown & Enochs, Chtd. - OP
10111 W 87th St
Overland Park, KS 66212

FOR DEFENDANT SUMMIT CONTRACTORS, INC.:

_____ KBE IS 210
S. MICHAEL THOMAS
Sherman Taff Bangert Thomas & Coronado, P.C.
1100 Main St., Suite 2890
P. O. Box 26530
Kansas City, Missouri 64196

FOR DEFENDANTS OLATHE LEASED HOUSING ASSOCIATES I, L.P.;
     DOMINIUM OLATHE PARTNERS; OLATHE LEASED HOUSING
     ASSOCIATES II, L.P.; AND DOMINIUM KANSAS ONE:

_____
NORMAN J. BAER
NATHAN P. BRENNA
Anthony, Ostlund and Baer, P.A.
90 South Seventh Street, Suite 3600
Minneapolis, MN 55402